UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| QUALITY MANUFACTURING SYSTEMS, INC., | ) ) ) | |
|     Plaintiff Counterclaim-Defendant | ) ) ) | No. 3:13-0260 |
| v. | ) ) ) | Magistrate Judge Bryant **Jury Demand** |
| R/X AUTOMATION SOLUTIONS, INC., | ) ) | |
|     Defendant Counterclaim-Plaintiff | ) ) | |

**MEMORANDUM AND ORDER**

Pending in this case is the Motion for Partial Summary Judgment filed on behalf of Defendant R/X Automation Solutions, Inc. ("RXAS") (Docket Entry No. 33), to which Plaintiff Quality Manufacturing Systems, Inc. ("QMSI") has responded in opposition (Docket Entry No. 37).

For the reasons stated below, the Court finds that RXAS's Motion for Partial Summary Judgment must be DENIED.

**STATEMENT OF THE CASE**

In this action removed from the Chancery Court for Rutherford County, Tennessee, Plaintiff QMSI alleges that Defendant RXAS has breached the "Pill Counter Agreement" between the parties dated July 23, 2007, by wrongful termination of the Agreement. QMSI has asserted causes of action for breach of contract, breach of the covenants of good faith and fair dealing, unjust enrichment, breach of fiduciary duties, and intentional interference with business relationships. As relief, QMSI seeks a declaratory judgment to the effect that the Pill Counter Agreement remains in effect and

binding on RXAS, together with an award of compensatory and punitive damages.

Defendant RXAS has filed an answer denying liability, asserting affirmative defenses, and asserting counterclaims under theories of breach of contract, violation of the Tennessee Consumer Protection Act, and violation of the Tennessee Uniform Trade Secrets Act. RXAS seeks a declaratory judgment that the Pill Counter Agreement is terminable by either party upon reasonable notice as well as an award of monetary damages (Docket Entry No. 17).

**STANDARD OF REVIEW**

A party may obtain summary judgment by showing "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine dispute of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if

appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## STATEMENT OF PERTINENT FACTS

RXAS seeks partial summary judgment based upon the provisions of the Pill Counter Agreement (Docket Entry No. 1-1 at 23-29), together with a minimal number of additional undisputed facts (Docket Entry No. 38).

A review of the Agreement, which consists of approximately three and one-half typed pages, shows that QMSI and RXAS entered into this agreement in July 2007 to provide "for commercialization of the RX-Count Automatic Tablet and Capsule Counting Systems." The agreements between the parties were separated into two phases. In general, Phase 1, called "Production System Development," required the parties to cooperate and to collaborate in order to develop a prototype pill counting system, called the RX-Count Pill Counting System, created by RXAS into a product ready to sell commercially to mail order pharmaceutical vendors and other customers within the pharmaceutical industry. The

3

parties agree that Phase 1 of the their agreement has been satisfactorily completed.

Phase 2 of the Pill Counter Agreement, is called the "Commercial System Production and long-term supply agreement." During Phase 2, QMSI is entitled to purchase pill counters from RXAS "at the most advantageous (lowest) price offered to any other company." In addition, "[p]riority order fulfillments, whether from production or from stock, will be given to QMSI."

It appears undisputed that the parties have operated under this Agreement for a period of time, and that RXAS, through counsel, on January 11, 2013, notified QMSI by letter that RXAS intended to terminate the Pill Counter Agreement effective July 1, 2013. This letter stated that such termination would include, but not be limited to, "the termination of any right of QMSI to purchase pill counters from RXAS under the conditions as stated in the Pill Counter Agreement."

## ANALYSIS

The sole issue presented by RXAS's motion for partial summary judgment is whether RXAS is entitled to terminate the Pill Counter Agreement upon reasonable notice.

In support of its argument, RXAS maintains that the Agreement, especially following completion of Phase 1, is predominantly one for the sale of goods, which is therefore governed by the Uniform Commercial Code. RXAS further argues that the Agreement does not contain a termination provision and, therefore, is a contract of indefinite duration. As such, RXAS maintains that, pursuant to Tenn. Code Ann. § 47-2-309(2), the

Agreement is terminable by either party upon reasonable notice. Section 47-2-309(2) provides as follows: "Where the contract provides for successive performance but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party." Finally, RXAS argues that even if the termination provisions of the Uniform Commercial Code do not apply, Tennessee common law would permit termination of the Agreement upon reasonable notice unless the contract clearly manifests the intent to enter into a perpetual contract.

In its response in opposition, QMSI does not challenge directly the legal doctrines relied upon by RXAS. Instead, QMSI argues that such principles are inapplicable here because the Pill Counter Agreement is not one for an indefinite duration, but rather was intended by the parties, according to its plain language, to remain in effect as long as RXAS produces pill counters. Specifically, QMSI relies upon provisions of the Agreement which provide that the terms and conditions of the Agreement will apply "through all phases of the product life cycle" and serve as a "long-term supply agreement." Moreover, paragraph number 3 under "Phase 2 Details" states that if RXAS "creates enhanced or competitive products for pill counting, QMSI will be granted rights to purchase the enhanced and competitive products under the same conditions (including, but not limited to price and order fulfillment priorities) as the initial pill counter." The immediately following paragraph reads as follows: "There is no expiration date for QMSI rights to purchase the pill counters covered in items 2 and 3 above." Based upon these and other

5

provisions of the Agreement, QMSI argues that the contract language clearly evidences the intent of the parties that QMSI's right to purchase pill counters from RXAS at a favorable price and with order fulfillment priority would continue not for an indefinite period, but, instead, until the satisfaction of a condition – cessation of pill counter sales by RXAS.

The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.,* 78 S.W.3d 885, 890 (Tenn. 2002). The court's role in resolving disputes regarding the interpretation of a contract is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language used. *Guiliano v. CLEO, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). Where the language of the contract is clear and unambiguous, its literal meaning controls the outcome of contract disputes; but, where a contractual provision is ambiguous, *i.e.*, susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language. *Planters Gin Co.*, 78 S.W.3d at 890.

Where the contract itself does not state its duration, courts have generally held that it should be effective for a reasonable time or terminable at will with reasonable notice. However, where the parties have indicated an intent that their contractual obligations last indefinitely until the occurrence of a particular event, many courts have concluded that the contracts are terminable only upon the occurrence of that event. *Johnson v.*

*Welch,* 2004 WL 239756 at *10 (Tenn. Ct. App. Feb. 9, 2004) (unpublished).

From a review of the parties' agreement, and interpreting its provisions in terms of their normal, usual meaning, the Court cannot find as a matter of law that the Agreement may be terminated by RXAS upon reasonable notice. The Court finds that certain contractual provisions, including those quoted above, may be construed to support a finding that the parties intended that the provisions of Phase 2 of the Agreement would survive as long as RXAS continued to manufacture pill counters. Accordingly, the Court finds that RXAS's motion for partial summary judgment (Docket Entry No. 33) must be **DENIED**.

It is so **ORDERED**.

/s/ John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge