UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| QUALITY MANUFACTURING SYSTEMS, INC., | ) ) ) | |
| Plaintiff/Counterclaim-Defendant, | ) ) | No. 3:13-cv-00260 |
| v. | ) ) ) | Magistrate Judge Bryant[1] **Jury Demand** |
| R/X AUTOMATION SOLUTIONS, INC., | ) ) | |
| Defendant/Counterclaim-Plaintiff. | ) | |

## MEMORANDUM AND ORDER

Defendant R/X Automation Solutions, Inc. ("RXAS") has twice moved the Court to compel discovery. (Docket Entries 65, 84, and 86).[2] Plaintiff Quality Manufacturing Systems, Inc. ("QMSI") has responded to these motions. (Docket Entries 70 and 105). RXAS filed a reply. (Docket Entry 122). For the following reasons, the first motion to compel (Docket Entry 65) will be **GRANTED IN PART AND DENIED IN PART**, and the second motion to compel (Docket Entries 84 and 86) will be **GRANTED**.

### I. STATEMENT OF THE CASE

From 2005 to 2007, QMSI and RXAS collaborated to create a "machine that could dispense a preselected number of pills into a consumer-type prescription bottle." (Docket Entry 1 ¶¶ 16-18). This machine is referred to as a "pill counter." (Docket Entry 1 ¶ 16). The parties' arrangement is summarized in a formal "Pill Counter Agreement" ("Agreement"). (Docket Entry 1 ¶¶ 20-21). The Agreement is divided into two phases. (Docket Entry 1 ¶ 23). First, the pill counter would be phased from a prototype to a commercially produced system. (Docket Entry 1

---

[1] Upon consent of the parties, this lawsuit is proceeding before the Magistrate Judge. (Docket Entry 48).
[2] RXAS filed its second motion to compel discovery under seal (Docket Entry 84) and in a redacted version (Docket Entry 86).

1

¶ 23). The second phase addressed the sales and marketing agreements for the pill counter and a guarantee that QMSI would be given the right to purchase pill counters at low prices and with priority in order fulfillment. (Docket Entry 1 ¶ 24).

The trouble began in January 2013, when QMSI received a letter from RXAS purporting to terminate the Agreement and end the low-price, priority sales terms enjoyed by QMSI. (Docket Entry 1 ¶¶ 44-45). QMSI, in turn, filed a complaint in this Court alleging that RXAS's termination letter amounts to a breach of contract (Count I), a breach of the covenant of good faith and fair dealing (Count II), unjust enrichment (Count III),[3] a breach of fiduciary duty (Count IV), and intentional interference with business relationships (Count V). (Docket Entry 1 ¶¶ 50-74). Along with those claims, QMSI sought a declaratory judgment to the effect that the Agreement remains in effect and is binding on QMSI and RXAS (Count VI). (Docket Entry 1 ¶¶ 75-78).

RXAS filed an answer and counterclaims on April 26, 2013. (Docket Entry 17). While RXAS denied liability as to QMSI's claims (Docket Entry 17 ¶¶ 50-79), RXAS asserted the following counterclaims: breach of contract (Count I), violation of the Consumer Protection Act, Tenn. Code Ann. § 47-18-104, *et seq.* (Count II), violation of the Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701, *et seq.* (Count III),[4] and a request for declaratory judgment (Count IV). (Docket Entry 17 ¶¶ 56-79). QMSI has filed an answer, denying the allegations in RXAS's counterclaims. (Docket Entry 26).

A protective order was entered on August 8, 2013. (Docket Entry 30). Shortly after that, RXAS and QMSI each moved for partial summary judgment. (Docket Entries 33 and 40). The undersigned denied RXAS's motion and granted QMSI's motion, finding, as a matter of law,

---

[3] QMSI later withdrew this claim. (Docket Entry 108, p. 3) (Docket Entry 110, p. 3).
[4] RXAS later withdrew this claim. (Docket Entry 104-1).

that (1) the Agreement remains in effect and is binding on the parties and (2) RXAS's attempt to terminate the Agreement violated the terms of the Agreement. (Docket Entries 56 and 58). The issue of damages was reserved. (Docket Entry 58, p. 11). QMSI's following claims are still unresolved: breach of the covenant of good faith and fair dealing (Count II), breach of fiduciary duty (Count IV), and intentional interference with business relationships (Count V). RXAS's following claims are also unresolved: breach of contract (Count I) and violation of the Consumer Protection Act, Tenn. Code Ann. § 47-18-104, *et seq.* (Count II). Presently, RXAS's motions to compel discovery are pending before the Court.

## II. STANDARD OF REVIEW

"On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Should a party's responses to discovery be evasive or incomplete, the party will be treated as though it failed to respond. Fed. R. Civ. P. 37(a)(4). The party seeking an order compelling discovery must certify that it made a good faith effort to resolve the discovery dispute before seeking the court's assistance. Fed. R. Civ. P. 37(a)(1); Local Rule 37.01(b)(3).[5]

Rule 26(b) of the Federal Rules of Civil Procedure outlines the permissible scope and limits of discovery in federal courts. The Rule was recently amended, in part, "to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment.[6] The scope of discovery includes:

> nonprivileged matter that is ***relevant*** to any party's claim or defense and ***proportional to the needs of the case***, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

---

[5] RXAS has provided the required certification. (Docket Entry 65 ¶ 2) (Docket Entry 86 ¶ 1).
[6] Amended Rule 26(b)(1) will be applied to the pending motions to compel. *See* Fed. R. Civ. P. 86.

Fed. R. Civ. P. 26(b)(1) (emphasis added). As the advisory committee's notes clarify, the scope of discovery was not intended to include everything "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment. For that reason, the advisory committee removed the "reasonably calculated" language and "restored the proportionality factors to their original place in defining the scope of discovery." *Id.*

### III. ANALYSIS

RXAS seeks an order compelling QMSI to: supplement its responses to Interrogatory No. 4, Interrogatory No. 9, and Request for Production No. 6; explain which documents are responsive to Request for Production No. 1 through 9; and provide supplemental documents and deposition testimony regarding QMSI's attempts to improve RXAS's pill counter.[7]

**A. RXAS's First Motion to Compel (Docket Entry 65)**

**1. Interrogatory No. 4**

In response to an allegation in RXAS's counterclaims, QMSI represented that it had successfully developed or manufactured automation products in mail order pharmacies. (Docket Entry 26 ¶ 20).[8] RXAS's Interrogatory No. 4 states: "Identify any automation products for use in mail order pharmacies [QMSI] has developed or manufactured in reference to [QMSI's] denial of paragraph 20 of the counterclaim. For each product identified describe in detail all marketing efforts used to commercialize the product and all sales of such product." (Docket Entry 66, p. 6).

QMSI responded to the interrogatory with the following:

---

[7] RXAS withdrew a portion of its motion to compel. (Docket Entry 175). The remaining issues are discussed herein.
[8] QMSI denied the allegation that "Upon information and belief, [QMSI] had never had any successful development or manufacture of any automation products in any mail order pharmacies." (Docket Entry 26 ¶ 20).

> QMSI objects to the foregoing interrogatory as overboard, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, in that it request information related to "all marketing efforts" and "all sales" of the referenced products "in detail." Such detailed marketing and sales information would not be relevant in any way to QMSI's claims or RXAS's counterclaims, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to that objection, QMSI states that it has developed and manufactured: (1) rotating bottle scanners; (2) puck/vial crosscheck machines; and (3) belt depuckers that were and are at all times relevant to this suit in operation in many of QMSI's mail order pharmacy facilities.
>
> **Supplemental Response:** In addition to the objections noted above, QMSI also objects to this Interrogatory in that it seeks information no longer relevant to the case or reasonably calculated to lead to the discovery of relevant information in light of the Court's recent summary judgment order, because RXAS's liability for breach of contract has already been established. Subject to that objection and those noted above, QMSI states that it does not engage in marketing efforts beyond including its products in proposals to its customers.

(Docket Entry 66-4, p. 4).

RXAS argues that QMSI's response is inadequate and must be supplemented. According to RXAS, this information is relevant because QMSI denied the related paragraph in RXAS's counterclaims, the parties' claims and defenses concern "each company's reputation, history, areas of expertise, experience and other characteristics or attributes," and this information is relevant to QMSI's claim for breach of fiduciary duty. (Docket Entry 66, p. 7). QMSI takes the position that the information sought is irrelevant and has nothing to do with the pill counter system at issue or the relationship between QMSI and RXAS. (Docket Entry 70).

RXAS has not established that the sales and marketing information for the (1) rotating bottle scanners, (2) puck/vial crosscheck machines, and (3) belt depuckers is relevant or proportional to the needs of the case. The fact that QMSI denied an allegation in RXAS's counterclaims does not automatically render discoverable the subject matter of that allegation. Such a rule would lead to absurd results. Turning to RXAS's substantive reasons for requesting this information, the undersigned is not convinced that QMSI's successful development and

5

manufacturing of automated products other than pill counters is relevant. This suit arose over an alleged breach of contract. RXAS's counterclaims widened the scope of this issue, as RXAS complained about QMSI's modifications to a pill counter prototype and QMSI's alleged statements regarding RXAS's pill counters. While QMSI's sales and marketing efforts regarding pill counters may be relevant, RXAS has not established that QMSI's efforts to sell and market these other machines are related to the claims and defenses in this lawsuit.

To the extent this interrogatory is construed as requesting information regarding the pill counter materials sought in Request for Production No. 6, QMSI should respond. It is unlikely that this material would be responsive to the interrogatory, however, as the interrogatory requests information regarding "successful" developments. Subject to this limitation, RXAS's motion to compel a supplemental response to Interrogatory No. 4 is **DENIED**.

2. **Interrogatory No. 9**

Interrogatory No. 9 states: "Identify any and all efforts of [QMSI], whether successful or not, to 'enhance the profitability of RXAS' as stated in the Pill Counter Agreement." (Docket Entry 66, p. 9). QMSI responded with the following:

> QMSI objects to the foregoing interrogatory on the ground that the terms "efforts" is vague, ambiguous, and undefined, and that the interrogatory is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to those objects and the General Objects stated above, QMSI states that its decision to team with RXAS to develop and commercialize the pill counter – including QMSI's deployment of its goodwill in the marketplace and use of its own customers to test the pill counter-enhanced the profitability of RXAS. Further, by ordering a substantial number of pill counters from RXAS and installing them in its customer's facilities, QMSI has enhanced the profitability of RXAS. Finally, QMSI personnel, including but not limited to Edward Stinnett, have indicated to QMSI's existing and potential customers that RXAS's pill counters are the best available pill counters for use in large automated pharmacies, which has also enhanced the profitability RXAS. Further, pursuant to Rule 33(d), QMSI states that evidence of other ways in which QMSI has enhanced the profitability of RXAS is contained in the documents that will be produced pursuant to the request for production of documents, below.

6

> **Supplemental Response:** QMSI further objects to this Interrogatory on the ground that, that it seeks information no longer relevant to the case or reasonably calculated to lead to the discovery of relevant information in light of the Court's recent summary judgment order, because RXAS's liability for breach of contract has already been established.

(Docket Entry 66-4, pp. 8-9).

RXAS believes this information is relevant to proving that QMSI breached "certain obligations" in the Agreement. (Docket Entry 66, p. 9). Specifically, RXAS seeks the identities of the "existing and potential customers," what statements were made to these individuals, by whom they were made, and when they were made. (Docket Entry 66, p. 10). RXAS believes this response is abusive of Rule 33(d), stating that QMSI is required "to specify, by category and location, the records from which answers to interrogatories can be derived." (Docket Entry 66, p. 10). QMSI defends its response, complaining that RXAS's interrogatory was vague and did not define "efforts." (Docket Entry 70, pp. 5-6). As such, QMSI believes its response was sufficient, as it identified the following efforts: (1) working with RXAS to build and commercialize the pill counter, (2) ordering a substantial number of pill counters from RXAS and installing the counters in its customer's facilities, and (3) telling current and potential customers that RXAS's pill counters are the best available. (Docket Entry 70, p. 6). QMSI states that the reference to Rule 33(d) was intended to supplement its response, not serve as its response. (Docket Entry 70, p. 6).

Given the broad phrasing of this interrogatory, QMSI's response was adequate. A narrower interrogatory may have resulted in a more detailed response. As it is, the broad interrogatory was met with a similarly broad answer. QMSI identified three ways in which it sought to enhance RXAS's profitability. It is clear from RXAS's motion that it seeks more details concerning the statements QMSI made to existing and potential customers to enhance

RXAS's profitability. This is a reasonable inquiry, but as this information was not specifically requested in the original interrogatory, the undersigned is not inclined to award fees on this basis. To the best of its ability, QMSI should identify the identities of the "existing and potential customers," what statements were made to these individuals to enhance RXAS's profitability, by whom they were made, and when they were made. To this limited extent, RXAS's motion to compel (Docket Entry 65) is **GRANTED**.

**3. Request for Production No. 6**

Request for Production No. 6 requests the following: "All documents pertaining to any pill counter product (past and/or present) in whole or in part, developed, manufactured, purchased or acquired and/or any attempt to develop, manufacture, purchase or acquire by [QMSI]." (Docket Entry 66, p. 15). To this request QMSI responded:

> QMSI objects to the foregoing request for production of documents as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to that objection, QMSI will produce documents responsive to this request after the Court enters a comprehensive protective order in this case.

(Docket Entry 66, pp. 15-16).

According to RXAS, the documents are sought in connection with RXAS's claim that QMSI breached the Agreement by failing to share product development information with RXAS. (Docket Entry 66, p. 16). QMSI eventually produced a USB drive containing this material under an "attorney's eyes only" ("AEO") designation. (Docket Entry 87, p. 3).

QMSI's use of the "attorney's eyes only" designation has been challenged in a separate motion, RXAS's motion to change "confidential-attorney's eyes only" designation to "confidential-subject to protective order" designation on selected information. (Docket Entries

8

89 and 90).[9] QMSI should ensure that all documents responsive to this request for production are submitted to RXAS under the AEO designation. Whether these documents should ultimately be designated "AEO" or "confidential" will be taken up in a separate order. Subject to these conditions, RXAS's motion to compel (Docket Entry 65) is **GRANTED**.

   **4. Organization of Documents Produced**

RXAS objects to the manner in which QMSI has submitted documents in response to requests for production. (Docket Entry 66, pp. 17-18). Though QMSI provided an index of its document production, RXAS states, the documents responsive to each request for production have not been identified. (Docket Entry 66, p. 18). RXAS further states that QMSI has produced over 90,000 documents for which QMSI's index is 917 pages long. (Docket Entry 66, p. 18). RXAS seeks an order requiring QMSI to supplement its responses to the requests for production "to identify the documents which are responsive to each request for production or otherwise produce the disclosed records in a logical, organized and labeled fashion." (Docket Entry 66, p. 18).

QMSI states that its documents are electronically stored information ("ESI") and notes that RXAS did not specify a particular form of production for ESI. (Docket Entry 70, p. 11). As such, QMSI states it was only required to produce documents "in a reasonably usable form." (Docket Entry 70, p. 11).

The parties have happened upon an ongoing dispute regarding the application of Federal Rule of Civil Procedure 34(b)(2)(E)(i)-(ii) to ESI. The Rule sets forth the following default standards for the production of documents and ESI:

> (E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

---

[9] Docket Entry 89 is filed under seal. Docket Entry 90 contains a redacted version of the motion.

> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E).

"Courts are split on whether both Rule 34(b)(2)(E)(i) and Rule 34(b)(2)(E)(ii) apply to ESI productions or whether an ESI production must comply with only Rule 34(b)(2)(E)(ii)." *Mckinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-CV-2498-B, 2016 WL 98603, at *10 (N.D. Tex. Jan. 8, 2016). It does not appear as though the Sixth Circuit has spoken to this issue. Some courts find that Rule 34(b)(2)(E)(i)-(ii) govern distinct spheres of production, applying (E)(i) to "documents" and (E)(ii) to ESI. *Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.*, 305 F.R.D. 247, 253 (D. Colo. 2014); *Anderson Living Trust v. WPX Energy Prod., LLC*, 298 F.R.D. 514, 521 (D.N.M. 2014). Taking a different approach, courts applying both (E)(i) and (E)(ii) to ESI explain that (E)(i) is the "organizational" requirement that applies to both ESI and hard copy documents and (E)(ii) is the ESI-specific "format" requirement. *Mckinney/Pearl Rest. Partners, L.P.*, No. 3:14-CV-2498-B, 2016 WL 98603, at *10; *Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, No. 6:12-CV-00023, 2012 WL 6726412, at *2 (W.D. Va. Dec. 27, 2012); *City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 583-84 (C.D. Cal. 2011); *Diesel Mach., Inc. v. Manitowoc Crane Grp.*, No. CIV 09-4087-RAL, 2011 WL 677458, at *3 (D.S.D. Feb. 16, 2011); *QuinStreet, Inc. v. Ferguson*, No. C08-5525RJB, 2009 WL

1789433, at *5 (W.D. Wash. June 22, 2009); *MGP Ingredients, Inc. v. Mars, Inc.*, No. CIV.A.06-2318JWL-DJW, 2007 WL 3010343, at *4 n.12 (D. Kan. Oct. 15, 2007).

The line of cases applying Rule 34(b)(2)(E)(i) to the organization of documents and ESI and applying Rule 34(b)(2)(E)(ii) to the appropriate format of ESI is persuasive and will be applied in this matter. As to this issue, RXAS's motion to compel (Docket Entry 65) is **GRANTED**. Within **twenty days** QMSI is **ORDERED** to do one of the following: (1) produce the documents responsive to RXAS's Requests for Production No. 1 through 9 "as they are kept in the usual course of business" or (2) with regard to RXAS's Requests for Production No. 1 through 9, identify which documents were produced in response to each request for production. Fed. R. Civ. P. 34(b)(2)(E)(i).

## B. RXAS's Second Motion to Compel (Docket Entries 84 and 86)

Through the deposition testimony of QMSI employees, RXAS was alerted to the fact that QMSI had researched and attempted to develop several modifications to RXAS's pill counter. These modifications are referred to as the auger fix, the thumper issue, and the locking mechanism. RXAS contends that these attempted modifications are relevant because QMSI's failure to share this modification information with RXAS constitutes a breach of contract and a breach of an implied covenant of good faith and fair dealing. RXAS believes this information should have been produced pursuant to Request for Production No. 6, described above, and Request for Production No. 3 which requested similar information.[10] Additionally, RXAS believes it should have an opportunity to depose, at QMSI's expense, QMSI employees, Edward Louis Mayerick, and Matthew Duane Price concerning these attempted modifications.

---

[10] Local Rule 37.01(b)(2)(b) requires that motions to compel responses to requests for production "[i]nclude the response and the grounds assigned for the objection (if not apparent from the objection) . . . ." Though RXAS provided the text of Request for Production No. 3, QMSI's response was not likewise provided. (Docket Entry 85, p. 3).

QMSI responds that the Agreement did not require QMSI to share modification information with RXAS, making the modification information irrelevant. (Docket Entry 105). QMSI requests that this motion to compel not be decided until QMSI filed its motion for summary judgment on this issue. Additionally, QMSI states that while it has not produced the locking mechanism documents, it has produced the auger fix and thumper issue documents.

RXAS contests QMSI's argument that summary judgment should be decided before this discovery motion and reminds the Court that the protective order would protect any sensitive information produced. (Docket Entry 122). RXAS additionally states that it does not know where the auger fix and thumper issue documents are located in the massive document production and requests that these documents be identified by BATES number.[11]

At the discovery stage, the primary focus is on relevance and proportionality. Fed. R. Civ. P. 26(b)(1). RXAS reasonably argues that the modification information sought is relevant to its breach of contract claim. Whereas RXAS believes the Agreement required QMSI to share pill counter modification information with RXAS, QMSI believes the Agreement required no such thing. This issue has yet to be resolved. If, as RXAS contends, the Agreement required QMSI to share modification information with RXAS, evidence of modifications not disclosed to RXAS assists RXAS in establishing liability. RXAS also shows that the production of this information is proportional to the needs of the case. The information is relevant to the merits of a counterclaim, and QMSI and its employees exclusively control this information. Understandably QMSI is reluctant to produce its sensitive technical information. However, the parties have already addressed this general issue in the form of a protective order which offers two levels of document security, confidential and AEO. (Docket Entry 30). With these considerations in mind, RXAS's second motion to compel (Docket Entries 84 and 86) will be **GRANTED**. QMSI should

---

[11] This issue should be remedied by the relief granted in Part III(A)(4) of this Order.

supplement its document production and should make the necessary individuals available for deposition regarding the pill counter modifications. The materials produced and deposition testimony may be designated confidential or AEO as necessary.

It is so **ORDERED**.

/s/ John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge